

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00255-CR

_____

STEVEN WESLEY BARKER, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from County Court at Law
Hood County, Texas
Trial Court No. 53683

_____

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Steven Wesley Barker appeals his conviction for driving while his license was invalid (DWLI) and with a prior conviction for the same. *See* Tex. Transp. Code Ann. §§ 521.021, .457(a)(2), (f)(1). His sole issue on appeal is the sufficiency of the evidence to prove that his license was invalid at the time of the offense. Barker claims that because his license revocation took effect a certain number of days after the Texas Department of Public Safety (DPS) mailed him notice of the revocation, the State was required to offer evidence—or more accurately, required to offer more evidence than it did—to show if and when the notice of revocation was sent to Barker. We disagree and, after modifying the judgment to correct a clerical error, we will affirm.

## I. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The factfinder alone judges the evidence's weight, determines its credibility, and draws reasonable inferences from it. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021). "[T]he trier of fact may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when

2

drawing inferences from the evidence." *See Garcia v. State*, No. PD-0679-21, 2023 WL 151989, at *4 (Tex. Crim. App. Jan. 11, 2023) (quoting *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014)). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution as long as the inferences are reasonable based on the evidence's cumulative force. *Dunham v. State*, No. PD-0831-18, 2023 WL 151346, at *3 (Tex. Crim. App. Jan. 11, 2023); *Queeman*, 520 S.W.3d at 622.

The essential elements of DWLI are (1) operating a motor vehicle (2) on a highway (3) during a period in which the person's driver's license or privilege is suspended or revoked under a law of this State. Tex. Transp. Code Ann. § 521.457(a)(2). Barker's appeal focuses on the final element—whether his license was suspended or revoked at the time of his arrest.

## II. DWLI Statutes

The State presented evidence that Barker's license was revoked under Texas Transportation Code Chapter 521, Subchapter O. *See* Tex. Transp. Code Ann. §§ 521.341–.351 (2012)[1] (Subchapter O).

---

[1]Because Barker's license was revoked in 2012, we apply the DPS revocation statutes in effect at that time. Citations to the 2012 provisions are indicated with a parenthetical notation of the year. However, the relevant portions of the 2012 revocation statutes are substantially similar to those currently in effect. *Compare* Tex. Transp. Code Ann. § 521.344(e), (g), (g-1), *with id.* at § 521.344(e), (g) (2012).

3

Within that Subchapter, Section 521.344 provides for the suspension of a driver's license if the driver is convicted of certain intoxication-related offenses. *Id.* § 521.344(a), (b) (2012). And "[a]fter the date has passed, according to [DPS] records, for successful completion of the educational program designed to rehabilitate persons who operated motor vehicles while intoxicated, the director [of DPS] shall revoke the license of a person who does not successfully complete the program or, if the person is a resident without a license to operate a motor vehicle in this state, shall issue an order prohibiting the person from obtaining a license." *Id.* § 521.344(e) (2012). DPS is required to "promptly send notice of [the] revocation or prohibition order . . . by first class mail to the person at the person's most recent address as shown in the records of [DPS]."[2] *Id.* § 521.344(g) (2012). The revocation "takes effect on the 30th day after the date the notice is mailed" and it "remains in effect until [DPS] receives notice of successful completion of the educational program." *Id.*

## III. Sufficiency of the Evidence

Because Barker's Subchapter O license revocation took effect 30 days after DPS mailed him notice,[3] Barker claims that, (1) to prove DWLI, the State was

---

[2]The current statute also authorizes notice to be sent via "e-mail if the person has provided an e-mail address to [DPS] and has elected to receive notice electronically." *Id.* § 521.344(g)(2). But the e-mail provision was added in 2017 and was not in effect at the time of Barker's suspension. *See* Act of May 24, 2017, 85th Leg., R.S., ch. 1079, 2017 Tex. Gen. Laws 4225, 4225–28 (effective Sept. 1, 2017)

[3]In his brief, Barker applies Subchapter N rather than Subchapter O, so he argues that the revocation took effect 45 days after DPS mailed his notification letter.

required to show if and when it mailed him notice and that (2) it failed to offer sufficient evidence of those facts.

## A. We need not decide whether evidence of notice was required.

First, Barker claims that, to prove DWLI, the State was required to offer evidence "to show if or when the notice of suspension was sent to Barker." To support this contention, Barker heavily relies upon our sister court's opinion in *White v. State*. 458 S.W.3d 188 (Tex. App.—Texarkana 2015, no pet.). The State points out, though, that *White*'s holding has been rejected by other courts of appeals. *See Cantu v. State*, No. 07-17-00446-CR, 2019 WL 1285295, at *2–3 (Tex. App.—Amarillo Mar. 20, 2019, no pet.) (mem. op., not designated for publication).

In *White v. State*, the Texarkana Court of Appeals held that, "in order to show that a suspension period was in effect at the time of the alleged violation, the State must proffer competent evidence that it provided notice of the suspension to the licensee as required by [Chapter 521, Subchapter N]."[4] 458 S.W.3d at 192; *see Mondy v.*

---

*See* Tex. Transp. Code Ann. §§ 521.295(b), .297(a) (2012). Because Subchapter O—not Subchapter N—applies to the case, we construe Barker's argument broadly and extend its logic to Subchapter O. *See* Tex. R. App. P. 38.9.

[4]In *White*, the driver was arrested on November 6, 2012, and the State offered a copy of the driver's license return—the officer's in-car "computer report received in response to a computer inquiry regarding the status of a driver's license"—which showed three suspensions, two of which began on October 29, 2012, and the third of which began on November 5, 2012. *White*, 458 S.W.3d at 189–90 & n.2. White refuted this evidence, though, by providing a copy of the order of suspension, which was dated November 8, 2012. *Id.* at 190. White testified that he had received the order on November 11 and knew of no other suspensions. *Id.* The applicable

5

*State*, No. 06-16-00100-CR, 2017 WL 359786, at *2–3 (Tex. App.—Texarkana Jan. 24, 2017, pet. ref'd) (mem. op., not designated for publication) (quoting and applying *White* when driver testified he had no knowledge of suspension). The Amarillo Court of Appeals "agree[d] with the court in *White* that [the mailing of a notice] is one way to prove a period of suspension," but it declined to "construe [S]ection 521.457 [i.e., the DWLI statute] as requiring proof of a period of suspension only by evidence of the mailing of a notice" and instead "conclude[d] that [a] certified abstract of [the] driving record indicating that [the driver's] license was suspended [wa]s sufficient evidence to support [a] conviction for DWLI." *Cantu*, 2019 WL 1285295, at *2–3.

We need not weigh in on this split for two reasons.

First, *White* and *Cantu* discuss the application of Subchapter N of Chapter 521, and Barker's license was revoked under Subchapter O. *See id.*; *White*, 458 S.W.3d at 191–93; *compare* Tex. Transp. Code Ann. §§ 521.291–.320 (Subchapter N), *with id.* §§ 521.341–.351 (Subchapter O). Although the relevant portions of Subchapter N and Subchapter O contain similar language—both requiring DPS to mail notification of a suspension or revocation, and both tying the effective date of the suspension or

---

license-suspension statute provided that the suspension "t[ook] effect on the 40th day after the date the person [wa]s considered to have received notice of the suspension or revocation under Section 521.295(b)," i.e., five days after the notice was mailed by DPS. Tex. Transp. Code Ann. § 521.295(b), .297(a) (2012); *see White*, 458 S.W.3d at 191–93. The only evidence of the license suspension came from the arresting officer's testimony and the license return, neither of which provided any indication that an earlier notice of suspension had been mailed to White. *White*, 458 S.W.3d at 193.

revocation to the date of mailing, *compare* Tex. Transp. Code Ann. §§ 521.295, .297(a), *with id.* § 521.344(g-1)—Barker's brief does not compare the two statutes or enunciate any reason why we should extend *White*'s non-binding Subchapter N holding to this Subchapter O case.[5]

---

[5]Although the two Court of Criminal Appeals cases relied upon in *White*— *Smith* and *Podany*—would be binding on us if they were applicable, they are not. *See generally Podany v. State*, 358 S.W.2d 118 (Tex. Crim. App. 1962); *Smith v. State*, 324 S.W.2d 207 (Tex. Crim. App. 1959). *Smith* and *Podany* discussed the predecessor to Subchapter N—Article 6687b, Section 22—and both cases relied on a now-irrelevant certified-mail statute, Article 29c. *See* Act of May 22, 1957, 55th Leg., R.S. ch. 424, § 1, 1957 Tex. Gen. Laws 1266 (effective June 6, 1957) [hereinafter Art. 29c] (then codified at Tex. Rev. Civ. Stats. Ann. art. 29c); Act of Apr. 14, 1941, 47th Leg., R.S., ch. 173, 1941 Tex. Gen. Laws 245, 252–53 (effective Apr. 23, 1941), *amended by* Act of July 16, 1959, 56th Leg., 2d C.S., ch. 41, § 1, 1959 Tex. Gen. Laws 161, 161–63 (effective Aug. 5, 1959) [hereinafter, Art. 6687b, § 22] (enacting and amending Tex. Rev. Civ. Stat. Ann. art. 6687b, § 22; repealed and recodified 1995); *see also* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1563–68 (recodifying transportation statutes).

Article 6687b, Section 22 authorized DPS to suspend a driver's license after a hearing, and the driver was entitled to 10 days' notice of the hearing. Art. 6687b, § 22(a). "Notice by registered mail . . . constitute[d] service," *id.*, but under Article 29c, "certified mail with return receipt requested [could be used] in lieu of registered mail" and would "have the same legal effect as if sent by registered mail, *provided receipt for such certified mail [wa]s validated by official post office postmark*." Art. 29c (emphasis added).

In *Smith*, the driver had no actual notice of the hearing or suspension until he was charged with DWLI. 324 S.W.2d at 207. Notice of the hearing was attempted by certified mail, but the post office did not validate receipt; instead, the post office marked the notification letter as unclaimed. *Id.* at 208. Moreover, even after the hearing, "the record show[ed] that appellant was not notified that [DPS] had . . . ordered his operator's license suspended." *Id.* Notice of the suspension was mailed to the driver's address, but the letter was returned to DPS, and "[s]o far as th[e] record reveal[ed], th[e] letter was not sent by registered mail or by certified mail."

And second, even if we were to extend *White* to this case, it would not be

dispositive. *White*, *Cantu*, Barker, and the State all agree that evidence of mailing a

statutory notice is at least one method of proving that a license has been revoked, and

here, the State chose to present such evidence—whether it was required to do so or

not. *See Cantu*, 2019 WL 1285295, at *2–3; *White*, 458 S.W.3d at 191–93.

---

*Id.* Because the driver was not provided with notice of the hearing or suspension, the court reversed his conviction. *Id.*

In *Podany*, DPS again relied on certified mail (as a substitute for registered mail) to send notice of the license suspension, but again the post office marked the certified letter as unclaimed rather than "validat[ing]" receipt "by official post office postmark." 358 S.W.2d at 119. The driver had no actual notice of the suspension prior to his DWLI. *Id.* And the driver had retained possession of his driver's license even though the relevant statutory provisions required DPS to confiscate the suspended license. *Id.* at 118–19. Citing *Smith*, the court reversed the DWLI conviction, *id.*, noting that the legislature required official validation of receipt for certified mail to "have the same legal effect as if sent by registered mail," *id.* at 120 (overruling motion for rehearing).

*Smith* and *Podany* thus turned on the statutory validation requirements for DPS's use of certified mail, and the records in those cases affirmatively demonstrated that (1) DPS had not provided notice in compliance with the relevant statutes and (2) the drivers lacked actual notice. *See Podany*, 358 S.W.2d at 118–19; *Smith*, 324 S.W.2d at 207–08; *cf. Simmons v. State*, 443 S.W.2d 852, 853–54 (Tex. Crim. App. 1969) (quoting *Podany*'s discussion of Article 29c and reversing DWLI conviction when DPS sent notice of hearing via certified mail and notice was returned to sender).

But by 2012, when Barker's license was revoked, DPS was no longer required to send Subchapter N or Subchapter O revocation notices via registered mail or validated certified mail. Instead, DPS was required to send notification of a suspension or revocation via first-class mail. *See* Tex. Transp. Code Ann. §§ 521.295(a), .344(g) (2012); Act of May 30, 1999, 76th Leg., R.S., ch. 1409, § 2, 1999 Tex. Gen. Laws 4758, 4758 (amending Section 521.344, Subchapter O to provide for notice via first-class mail); Act of May 26, 1999, 76th Leg., R.S., ch. 1117, § 1, 1999 Tex. Gen. Laws 3988, 3989 (amending Section 521.295, Subchapter N to provide for notice via first-class mail). Thus, *Smith* and *Podany* do not control.

**B.** **The State offered sufficient evidence of Barker's license revocation, including evidence that it mailed Barker a Subchapter O notice.**

The State was required to prove that, at the time of Barker's offense—April 25, 2022—his license had been suspended or revoked under a law of this State. Tex. Transp. Code Ann. § 521.457(a)(2). The State chose to prove this by, among other things, offering multiple pieces of evidence from which a reasonable jury could conclude that Barker had been provided a Subchapter O notice of revocation more than a decade before his 2022 offense.

First, the State offered a certified copy of Barker's driving record.[6] *See Stautzenberger v. State*, 232 S.W.3d 323, 326–27 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding evidence of DWLI sufficient when State offered certified driving record); *cf. White*, 458 S.W.3d at 193 (holding evidence insufficient when driving record came in the form of a "license return printed out from [the arresting officer's] in-car computer"). The driving record is divided into sections, including (1) an "Event History" section, which "displays information relating to convictions, crash involvement, safety courses completed, out-of-state surrendered license history and education program certificates"; (2) an "Enforcement Action History" section, which states that it "displays enforcement actions that may affect a person's eligibility to

---

[6]Much of the driving record is printed in all capital letters, as are portions of the certified notification letter discussed below. To improve readability, we have altered the capitalization of all-capitals excerpts by capitalizing only the first letter of each word.

drive" with "[a]dditional information pertaining to any event related to the enforcement action . . . in the Event Section"; and (3) a "Status Information" section, which "reflects a person's eligibility to drive at the time th[e] document was requested" in July 2022.

The "Status Information" section summarizes Barker's "Driver Eligibility" by stating that he is "Not Eligible" to drive. Barker's "Event History" provides background for his ineligible status by showing that he was convicted of driving while intoxicated in June 2011, that his sentence was probated, and that a "DWI Education Program [was] Required." This conviction is listed as "Event 8" in Barker's "Event History," and it is cross-referenced in the "Enforcement Action History."

Specifically, the "Enforcement Action History," referencing "Event 8," shows that Barker's license was revoked in February 2012:

| **ACTION 19** | **ACTIVE** | **REVOKED - FAILURE TO COMPLETE DWI EDUCATION PROGRAM** | |
|---|---|---|---|
| Begin Date: | 02/18/2012 | End Date: | INDEFINITE |
| | | Notice Date: | 01/21/2012 |
| | | State: | TX |
| Related Event(s): | EVENT 8 | | |

Notably, "Action 19" is marked as "Active" while the other 23 enforcement actions listed in Barker's driving record are marked as "Expired" or "Lifted." The "Active" notation is contextualized by the "Indefinite" end date of Barker's "Action

10

19" revocation, and both notations corroborate Barker's "Status Information" that he is "Not Eligible" to drive.

Moreover, the "Notice Date" listed on Barker's certified driving record reflects that he was provided notice of his revocation on "1/21/2012," more than ten years before his April 2022 offense. *Cf. White*, 458 S.W.3d at 193 (holding evidence insufficient when license return contained no evidence that the notice of suspension had been mailed). The jury was even provided a certified copy of the 2012 letter notifying Barker of the revocation. *See* Tex. Transp. Code Ann. § 521.344(g) (2012). This notice is entitled "Notice of Revocation," it is addressed to Barker, and it bears the "Notice Date" listed on Barker's driving record—January 21, 2012. *Cf. White*, 458 S.W.3d at 193 (holding evidence insufficient when DPS notification was dated two days after offense). The letter informs Barker that his "driver['s] license . . . will be revoked because [he] failed to complete an Education Program that was duly imposed as a condition of probation[,]" that unless he "request[s] a hearing, [his] license will be revoked indefinitely effective 02/18/2012," and that "[t]o prevent or lift the revocation[, DPS] must receive proof that the Education Program was completed." [Emphasis omitted.] At the bottom of the notification letter, it lists DPS's "Statutory Authority" as "Texas Transportation Code Section 521.344; 522.089," confirming that the letter is intended to be the "prompt[]" notice required under Section 521.344 of Subchapter O. Tex. Transp. Code Ann. § 521.344(g) (2012).

11

Although Barker questions whether this letter was ever placed in the mail, the certified copy of the letter, "Notice Date" notation, and DPS record of an "Active" revocation are all evidence that it was, as is Barker's admission that he received actual notice that his license was invalid. *See White*, 458 S.W.3d at 193–94 (acknowledging that the dated notification from DPS was "evidence showing a notice of suspension was mailed to White regarding the August 28 conviction" but holding evidence insufficient when notice was dated and received after commission of DWLI). *But cf. Mondy*, 2017 WL 359786, at *2 (holding evidence of notice insufficient when notification letters were offered into evidence but driver testified that he did not receive them). The arresting officer testified that, when he walked up to Barker's vehicle to speak with him, Barker "told him that [his license] was suspended."[7] *Cf. White*, 458 S.W.3d at 190, 193–94 (holding evidence insufficient when evidence showed, among other things, that driver was not aware of his suspension). The officer confirmed this information by entering Barker's name and date of birth in his computer system, where he saw that Barker's driving record reflected an active license revocation since 2012. *See Sutton v. State*, No. 12-19-00210-CR, 2020 WL 1697434, at *4–5 (Tex. App.—Tyler Apr. 8, 2020, no pet.) (mem. op., not designated for

---

[7]The jury was also provided with documentation showing Barker's conviction for DWLI in 2013, which had been enhanced by yet another DWLI conviction in August 2012. Barker pleaded nolo contendere to the 2013 DWLI. But that DWLI conviction was based on a different license suspension or revocation than the "Action 19" revocation discussed here.

publication) (holding evidence of DWLI sufficient when State offered certified driving record showing indefinite suspension and testimony from arresting officer that license was suspended).

Given this evidence—the certified driving record reflecting that Barker was "Ineligible" to drive due to an "Active" and "Indefinite" revocation, the "Notice Date" entry on the driving record, the certified copy of the notification letter bearing the same date, the arresting officer's testimony that Barker's license had been revoked, and Barker's admission that he knew his license was invalid—a reasonable jury could have inferred that DPS mailed Barker notice of his revocation on or about January 21, 2012 and that the "Indefinite" revocation—which took effect on "the 30th day after the date the notice [wa]s mailed,"[8] Tex. Transp. Code Ann. § 521.344(g) (2012)— began more than a decade before Barker committed his DWLI in April 2022.

We overrule Barker's sole issue.

---

[8]Barker emphasizes that the February 18, 2012 "Begin Date" listed on his driving record was the 28th day after the "Notice Date" even though, under Subchapter O, the revocation did not take effect until "the 30th day after the date the notice [wa]s mailed." Tex. Transp. Code Ann. § 521.344(g) (2012). But a reasonable jury could have taken this discrepancy into account in assessing the credibility of the driving record; the jury was not required to throw out the exhibit in its entirety. *Cf. Garcia*, 2023 WL 151989, at *4 (reiterating that "[t]he jury acts as the sole judge of the credibility of the witnesses and may choose to believe all, some, or none of the testimony presented"). Moreover, Barker was not arrested on the 28th or 29th day after the notice was mailed—he was arrested more than ten years later. *Cf. White*, 458 S.W.3d at 189–90, 193 (holding evidence insufficient when DPS notification was in close proximity to and dated two days after offense).

13

## IV. Reformation

But on our own motion, we reform the judgment to correct a clerical error.

"We have the power to sua sponte correct and reform the trial court's judgment 'to make the record speak the truth' when we have the necessary data and information to do so." *Criado v. State*, No. 02-21-00104-CR, 2022 WL 2071791, at *4 (Tex. App.—Fort Worth June 9, 2022, no pet.) (mem. op., not designated for publication) (quoting *Munguia v. State*, 636 S.W.3d 750, 756 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd)); *see Arent v. State*, No. 02-20-00023-CR, 2020 WL 6326151, at *2 (Tex. App.—Fort Worth Oct. 29, 2020, no pet.) (mem. op., not designated for publication) ("We may modify a trial court's judgment to correct errors that contradict the record."). Here, a jury determined Barker's punishment, but the judgment erroneously states that the trial court "fixed" and "assessed" Barker's punishment.[9] [Capitalization altered.] We reform the judgment to reflect that the jury—not the trial court—"fixed" and "assessed" Barker's punishment. [Capitalization altered.]

---

[9]The judgment is entitled "JUDGMENT ON VERDICT OF GUILTY PUNISHMENT FIXED BY COURT" and it contains an entry reiterating, "PUNISHMENT ASSESSED BY: COURT."

## V. Conclusion

Having overruled Barker's sole issue and reformed the judgment to correct a clerical error, we affirm the judgment as modified. Tex. R. App. P. 43.2(a), (b).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  March 16, 2023